FILED
2020 Jun-01 PM 06:41
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **JERONICA L. MENEFEE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION No.:** |
| **v.** | ) | **2:18-cv-01208-CLM** |
| | ) | |
| **ACTION RESOURCES, LLC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## DEFENDANT'S REPLY
## TO PLAINTIFF'S RESPONSE IN OPPOSITION
## TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Lisa Karen Atkins
M. Tae Phillips
Ogletree, Deakins, Nash,
 Smoak & Stewart, PC
420 North 20th Street, Suite 1900
Birmingham, AL  35203
(205) 328-1900 Telephone
lisa.atkins@ogletreedeakins.com
tae.phillips@ogletreedeakins.com

Attorneys for Defendant,

# **TABLE OF CONTENTS**

DEFENDANT'S SUPPLEMENTAL UNDISPUTED OF FACTS .......................................

ARGUMENT ...........................................................................................................................

   I.    Menefee did not disclose a disability of chronic migraines to Action Resources .........

   II.    Plaintiff did not request a disability accommodation. ..............................................

      A.    A party cannot create a material issue of fact by contradicting previous sworn

      testimony. ......................................................................................................

      B.   Temporary work restrictions are not a disability under the ADA. ...........................

      C.    Emailing contradictory doctor's notes to an employer does not constitute a requ

      a disability-based accommodation. ...................................................................

   III.    Plaintiff has failed to rebut, based on firsthand knowledge, Action's proof of undu

   hardship. ............................................................................................................

   IV.    Menefee fails to establish race discrimination under 42 U.S.C. § 1981. ...................

   IV.    Action invited Plaintiff to return to work, and Plaintiff declined. ............................

CONCLUSION .....................................................................................................................

## DEFENDANT'S SUPPLEMENTAL UNDISPUTED OF FACTS

1.      Chronic migraine is defined as having at least 15 headache da[ys]
month, with at least 8 days of having headaches with migraine features, for [more]
than 3 months. Doc. 38-1, p. 26.

2.      Ms. Menefee only mentioned having a migraine headache one [time].
This was on August 22, 2017, when she asked to leave work 1.5 hours early, st[ating]
that noise caused by construction in the office and people trying to talk over i[t was]
giving her a migraine. Doc. 38-1, p. 31¶ 4.

3.      Before she was hired by Action, during her interview, Ms. Me[nefee]
herself mentioned the gap in her employment history, volunteered that she ha[d had]
an illness. When asked if the illness had resolved, Ms. Menefee said it had. Sh[e did]
not mention headaches, a disability, or any medical condition. Doc. 38-1, p.32[¶ 7]

4.      Action was aware that Ms. Menefee had a runny nose during the s[pring]
of 2017, but attributed it to allergies. Doc. 38-1, p. 32 ¶8.

5.      Shortly before her surgery, Ms. Menefee told Brandy Cupp she [had a]
CSF leak, which was fluid leaking from her nose. She said "they" did not know [what]
caused it. Ms. Menefee never said there was a connection between the leak [and]
migraines or that she was experiencing migraines. She only said she had [a]
[migraine in the past.] Doc. 38-1, p. 32 ¶9.

of common knowledge that she had migraines, this was not the case. Brandy

is the only person she told she had a migraine, and this happened the one day

she asked to leave work early while the work area was undergoing work

construction, and the noise was giving her a headache. Doc. 38-1, p. 32 ¶ 10.

7.      Other than one occasion when she left work early, Action has no re

of Menefee leaving  work because of a headache. Doc. 38-1, p. 33 ¶ 12.

8.      Brandy Cupp does not ask employees personal questions about

lives, but information is volunteered. Ms. Menefee did talk  to Ms. Cupp abou

past history of unemployment, but she did not attribute her unemployme

migraines or say it was caused by migraines.  Ms. Menefee did not state to Cup

she was currently having migraines.  Doc. 38-1, p. 33 ¶ 13.

9.      Other than the one time Ms. Menefee asked to leave work ear

August 22, 2017, the only past migraines that may have been discussed was

Ms. Menefee was about to go out for surgery. She did not say she was curr

having migraines at that time. Doc. 38-1, p. 33 ¶14.

10.     During the Thanksgiving and Christmas holiday seasons, mid t

November and in December, an employee in Ms. Menefee's position cannot

4-6 hours per day. Long days and demanding schedules are required durin

has no knowledge of the requires hours, demanding schedule and work durin

holiday season.  Doc. 38-1, p. 33 ¶ 15.

12.    All Settlement Department team members are required to use a

indicating whether they were on break, so if team members are on their cell ph

they were using their personal time. The sign applied to everybody while Mer

was working for Action, and it continues to apply to all employees in the Settle

Department.  Doc. 38-1, p. 34  ¶ 16.

13.    The Billing Department used them as well.  Doc. 38-1, p. 34  ¶ 17

14.    When Ms. Menefee was released to return to work on Novembe

2017, she had been released by her doctor, had recovered from surgery, and h

restrictions. Menefee texted Brandy Cupp to state she had headaches and b

vision while she was recuperating from her surgery, but Cupp's understanding

that by November 20, 2017, she was healthy and had been released to return to

without restrictions.  Doc. 38-1, p. 34  ¶ 19.

15.    Action has no record or knowledge of any communication

Menefee requesting a disability accommodation.  Doc. 38-1, p. 34  ¶ 20.

16.    Menefee was not given permission to be absent from wor

November 20, 2017. She did not ask for permission to be absent, for an extensi

her approved leave, or for permission to work partial days. She did not requ

17.     Steve Royce and Brandy Cupp testified under oath that they would

taken her Menefee back if she had reapplied in thirty days, with the same pos

pay, title, and benefits. Doc. 25-20, 176:5; 189: 15-22; Doc. 25-16, 73:5-7; 13

## **ARGUMENT**

## I.     **Menefee did not disclose a disability of chronic migraines to Action.**

Under Action's disability accommodation policy, it is the emplo

responsibility to notify the company of any disability for which the empl

requires accommodation by notifying Human Resources. Doc. 25-15, p

Menefee did not disclose any information about migraines to Steve Royce

decisionmaker who administratively terminated her for failure to return to v

Doc. 25-20, 174:20-23.  As Royce testified:

> Q. Did she say anything to you about having migraines?
> A. No, ma'am.

*Id*. Royce also testified that there was nothing in her return to work certific

indicating that she had migraines (Doc. 25-20, 181:7-10), that she did not tell h

anyone else at Action that she had a disability (Doc. 25-26, p. 7, ¶ 22) and her s

term disability statement also said nothing about migraines:

> Q. Under 16(a), how does Ms. Menefee describe her sickness?
> A. CSF Leak

> Q. Is there anything indicating that the procedure that she was going to
> undergo was related to migraines?
> A. No, ma'am.

*Id*., 184:16-185:5.   Human Resources employee Kara Kyle also testified

Menefee said nothing to her about migraines:

> Q. Did she ever say anything to you about having
> migraines?
> A. I do not recall anything about migraines.
> Q. Did she ever say anything to you about having a
> disability?
> A. No.
> Q. Did she ever come to you and ask for a workplace
> disability accommodation.
> A. No.

Doc. 25-18, 83:16-84:2.   At her deposition, testifying under oath (unlike

declaration),   Menefee herself was unable to identify any notice that she pro

concerning migraines. In her deposition (Doc. 25-1), she testified:

> Q. Having gone through all the emails, this is the only mention I can fin
> a migraine. Do you recall any other messages that you sent to Brandy C
> about a migraine?
> A. I don't recall.
> Q. Do you recall any messages you sent to anyone who worked at Actio
> about a migraine?
> A. I don't recall.
> Q. Did you ever contact HR about having a migraine?
> A. I don't recall.
>
> Q. Did you ever request any kind of a workplace accommodation from

*Id*., 189:22-190:14. She further testified:

> Q. Did you contact the human resource department with any request for
> accommodation while you were working for Action?
> A. I don't recall ever doing so.

*Id*., 42:1-4.

Menefee repeatedly answered, "I don't recall"  when asked whether

contacted, notified or sent messages to anyone at Action saying that she was ha

chronic migraines. Plaintiff cannot carry her burden of establishing that she pro

notice of a disability to her employer by stating under oath that she does not

providing notice. The nonmoving party must come up with evidence that negate

version of events alleged by the moving party—an acknowledgment that the

may have occurred, but if the witness cannot remember, falls short.  *Wayne C*

*v. AT&T, Inc*., No. 2:18-cv-1639-ACA, 2019 WL 2268977, at * 3 (N.D. Ala.

28, 2019) (quoting *Chandler v. James*, 985 F. Supp. 1094, 1100 (M.D. Ala. 19

Menefee also answered "I don't recall" when asked why she was denied disa

benefits. Doc. 25- 2, 35:21-36:14.  She testified:

> Q:    Have you ever applied for disability benefits?
> A:    Yes  ma'am.
>       *       *       *
> Q.    What was the outcome -- first of all, what was the disability?
> A.    Migraines.
>       *       *       *
> Q.    Were you approved for disability benefits?

Here, the moving party (Action) strongly asserts that Menefee never disc

chronic migraines as a disability. Despite her carefully worded declaration, Me

does not actually state that she notified anyone at Action that she was disabled d

her employment or at the time of her separation. *See generally*, Doc. 31-2. Bec

Menefee did not self-identify as disabled or tell anyone at Action that she

experiencing chronic migraine headaches, the question is whether, anecdotally

sprinkled enough bread crumbs to constitute notice to her employer she was dis

due to chronic migraines. If not, Action had no notice of a disability of ch

migraines and no obligation to accommodate it because the obligatio

accommodate only extends to known disabilities. *Batson v. Salvation Army*

F.3d 1320 (11th Cir. 2018) (the ADA requires an employer to accommoda

employee with a known disability unless an accommodation would result in u

hardship to the employer).

Chronic migraines are defined as 15 or more migraine headache day

month for a period of at least three months. Doc. 38-1, p. 26. While employe

Action from February 2017 through October 2017, if she was a chronic mig

sufferer, plaintiff would have experienced a minimum of 15 migraines per mon

at least three months or 45 migraine headaches. *See* Id. During her eight-m

for Action.  Doc. 25-15, p. 27. On August 22, 2017, she sent the following em

her supervisor, Brandy Cupp:

---

**From:** Jeronica Menefee
**Sent:** Tuesday, August 22, 2017 4:28 PM
**To:** Brandy Cupp <brandy.cupp@actn.com>
**Subject:** RE: Time Off

Brandy

I will not be here until 6 today.  I have been trying my best to stay focused, but the
is giving me a BAD migraine.  I have been trying to block it out with headphones, bu
working.  Not only is it the construction, but people are trying to talk over the noise.

Thanks!

Jeronica Menefee
Driver Payroll
Work:   (205) 263-7299

---

*Id*. As testified to by Cupp, Menefee telling her she had a migraine was not a re

for a disability accommodation. Doc. 25-16, 76:21-77:2. Cupp stated:

> Q. By telling you that she had a migraine, was Ms. Menefee, under that p
> requesting a disability accommodation?
> A. No

*Id*.  Action submits that no reasonable jury could find that this email provided r

of a disability, especially since  Menefee very specifically wrote that the mig

was caused by construction noise. *Id*. Further, Royce was not aware of the

(Doc. 25-16, 21:20-22), and  according to Cupp, this was the only email Me

> Q. So you were asked about her having migraines, plural.
> A. Yes
> Q. To your knowledge, did you ever get -- did you ever get any inform
> from her that she had anything other than this single migraine at work?
> A. No.

*Id*.  In addition, there is no assertion by Menefee that Steve Royce knew that sh

work early one time because construction noise was giving her a headache.

Menefee's second mention of the word "migraine" occurred on October

2017, in a text to the corporation's controller while she was on personal leave

her nasal surgery (Doc. 31-2, p. 29).  She wrote:

> All I can do is pray for the best. It took me years to get back into the
> work force from being sick with migraines. I disliked the job before
> Action, but I'm finally with a company I enjoy.

Doc. 31-2, p. 29. The text said nothing about the nasal surgery causing migra

*See Id*. It said nothing about currently experiencing chronic migraines or l

disabled. *See Id*. Plaintiff states in her declaration that she "notified" corpor

controller John Rohwedder that she "was worried because of [her] histo

migraines and to please not replace [her]."   Doc. 31-2, p. 4, ¶ 21. The text doe

say "I am having migraines," "please do not replace me because of my migra

or mention currently having migraines. *See* Doc. 31-2, p. 29.

More importantly, Menefee does not assert, and there is no proof in the r

According to Menefee's declaration, she sent the text to Rohwedder (Doc. 31

21). She does not allege that it was received by Royce. *See generally*, Doc.

(failing to allege that Steve Royce received plaintiff's text message to Rohwec

Rohwedder did not work in HR (Doc. 38-1, p. 31 ¶ 3.) As such, there is no fa

basis to conclude that Rohwedder shared the text with the Royce.

The third and final reference to migraines is a note from a nurse at Men

ear nose and throat doctor's office listing temporary restrictions from the car w

**Return to Work/School Status**
*Work Status :*  Return to work, with restrictions
*Restricted Work/School Stop Date :*  12/20/2017

Work Restriction Grid

| Restrictions : | light actvity: -restricted work hours such as 4-6 hours a day -restricted computer usage due to uncontrolled migraine headaches and intermittent blurry vision -allow for frequent bathroom breaks due to taking a required medication containing diuretic |
| --- | --- |
| | Bailey, Jessica L |

Doc. 25-15, p. 43. This note indicated that Menefee could return to

immediately, but required temporary light-duty. *Id*. (making no reference to pla

being unable to work or needing any days off). The temporary nature o

restrictions is underscored by the designation of an end date: December 20,

*Id*. This was not notice of a disability.

With respect to information that was available to Royce when he mad

decision to terminate Menefee, this was ***Piece of Information #1. Piec***

***Information #2*** available to Royce when he made the termination decision v

note Menefee provided from the UAB emergency room stating that she shou

off from work on November 21 and 22, 2017. Doc. 25-15, p. 44. It read:

> Return to Work/School Status
> 11/20/17      02:07 pm      performed by Walden, Cindy
>                  Entered on 11/20/17        02:07 PM
>
> Return To Work/School Status
> Employer/School: Action Resources
> Return to Work/School start date: 11/23/17
>
> Return to Work/School Comment:  patient was seen in the
> UAB Highland ER on 11/20/17. Patient may return to work on
> 11/23/2017.

Doc. 25-15, p. 44. Thus, according to ***Piece of Information #2,*** Menefee could r

(according to the ER) and 29 days (according to the ear nose and throat doctor

no notice of a medical condition or impairment lasting longer than 29 days.

25-15, p. 44; Doc. 25-15, p.43.

Action notes parenthetically that in her declaration, Menefee states that

she left the ER, she was "released on a migraine protocol." Doc. 31-2, p. 4,

As shown by the doctor's note, there is no mention of migraines or a "mig

protocol." Doc. 25-15, p. 44. Menefee's declaration does not assert that a mig

protocol or the records attached to her declaration titled "Medical Visits Sum

11/20/2017," (Doc. 31-2, pp. 30-44) were provided to Action before her separa

*See* Doc. 31-2, ¶ 23. Based on her failure to state that these records were pro

to Action prior to her separation, there is no basis for the Court to assume that

were or to attribute knowledge of the records' content to Steve Royce.

When Menefee was terminated, Action had no records or notice

permanent disability, including chronic migraine headaches. Menefee was n

individual with a known disability, and absent knowledge of a disability on the

of Steve Royce, she cannot have been separated on the basis of disability, and A

is therefore entitled to summary judgment in its favor and dismissal of this cla

II.     **Plaintiff did not request a disability accommodation.**

> if an associate brings up a request for accommodation, that you
> review that and see if it's something that your company can do
> without causing unreasonable hardship on that company. <u>So there's
> a process that the employee would have to go through, to make the
> employer aware.</u> The employer would go through the appropriate
> steps and evaluate and make that determination."

Doc. 25-14, 18:9-19:7 (emphasis added).  Coley testified that Human Resource

not engage in this process with Menefee because there was no request f

accommodation. Doc. 25-14, 21:21-22:10.  In Ms. Coley's words, "it never

up." *Id*.  When asked about notice, Coley testified, ". . . it is the responsibility f

associate to make the leader or the organization aware of what their need is in

for them to be able to evaluate or even accommodate it." Doc. 25-14, 19:23-2

She further testified that it is the responsibility of the employee to notify hu

resources that they require an accommodation:

> Q. What would an employee have to do to make an employer aware?
> A. It would depend on what that organization has set up. **But, typically
> it is to reach out to their HR department to let them know that
> they have a situation that requires an accommodation and they
> have to make them aware of what the accommodation is.**
> Usually, typically, there's some forms that they have to fill out,
> either them directly or provide to their healthcare provider, which is
> in turn provided to the organization, allows them to review that data
> and make a determination moving forward.

Doc. 25-14, 19:8-22. According to the three Action Human Resources Depart

¶¶ 26-27;  Doc. 25-14, 21:21-22:10; Doc. 25-18, 83:16-84:2; Doc. 25-20, 17

23.  Although the decisionmaker, Steve Royce, was aware that plaintiff

undergoing surgery for what he understood to be sinus problems, she mad

mention of migraines, and requested no accommodation related to the surger

testified to by Mr. Royce:

> Q. Is there anything indicating that the procedure that she was going to
> undergo was related to migraines?
> A. No, ma'am
>
> *      *      *
>
> To the best of your recollection, did she ask for any accommodation for
> sinus problems?
> A. No she did not ask for any accommodation for sinus problems.
> Q. Or for the CSF leak, as she identifies in this document?[1]
> A. No, she did not.

[Record cite?]  It is uncontroverted that Menefee was released to work on Nove

20 with no restrictions (Doc. 38-1, p. 34  ¶ 19), and as she states, was "able to

to work on November 20, 2017." Doc. 25-8, p.2. In her communications wit

EEOC, Menefee stated that on November 20, 2017, the following occurred:

> I was able to return to work on November 20, 2017. On November 20
> 2017, I was involved in an automobile accident which required medica
> treatment at the Emergency Room. The physician gave me a return to
> work accused for Friday, November 24, 2017. I phoned management and
> sent my doctor's excuse to Human Resources Associate (Kara Kyle) via

> termination letter via email from Human Resources Associate Kara Kyle.
> I spoke with Maria Coley, Human Resources, who told me that the
> termination letter was sent because I did not report back to work. I told
> Ms. Coley that I sent my physician's excuse to Ms. Kyle.

Doc. 25-8, p. 2. Menefee provided this statement to the EEOC on April 6,

Notably absent is any claim that she was disabled, had chronic migraine

requested that her employer provide a disability accommodation. In fact, Me

denied being disabled.  Doc. 25-8, p. 2. According to Michael Albert's notes

25-8, p. 4), during her interview, Menefee did not say that she told anyone at A

that she was disabled, or ask for a disability accommodation. *See Id*. Th

consistent with the deposition testimony that Menefee emailed informatio

Human Resources employee Kara Kyle on the day of her car wreck, but did no

she was disabled or ask Kyle for a disability accommodation. Doc. 25-18, 65:1

83:20-84:2.

Therefore, the Court is confronted with three questions: first, wh

Menefee can create an issue of fact on summary judgment by contesting her pre

sworn testimony in which she had no recollection of requesting an accommod

second, whether temporary work restrictions constitute a disability; and

whether alone, the two doctor's notes emailed to Action constituted "a reque

accommodations in the form of continued employment, holding [her] jo

temporary relief, and a temporary reduced schedule" on the basis of a disa

under the ADA.  *See* Doc. 31-2, p. 6, ¶ 33.

> **A.** **A party cannot create a material issue of fact by contradi
> previous sworn testimony.**

As stated in *Israel v. Sonic-Montgomery FLM, Inc*., 231 F. Supp. 2d

(M.D. Ala. 2002), *Tippens v. Celotex Corp*., 805 F.2d 949 (11th Cir.1986), and

*T. Junkins & Assoc., Inc. v. U.S. Indus.,* 736 F.2d 656, 658-59 (11th Cir.198

affidavit that contradicts prior sworn statements with no explanation cannot be

to create an issue of material fact in summary judgment proceedings. *Israel* at

In *Van T. Junkins,* the Eleventh Circuit affirmed a grant of summary judg

holding that a district court may properly find that a party's contradictory affi

to be a sham. *Israel,* 1163-1164. The Court explained, "When a party has given

answers to unambiguous questions which negate the existence of any genuine

of material fact, that party cannot thereafter create such an issue with an affi

that merely contradicts, without explanation, previously given clear testimony.

F.2d at 657. The *Tippens* court then went on to narrow the *Van T. Junkins* rulin

stated that "an affidavit may only be disregarded as a sham `when a party has g

clear answers to unambiguous questions' ... and that party attempts `thereaft

create such an issue with an affidavit.'" *Israel* at 1166; *Tippens* at 954. On Jan

8, 2020,[2] during her deposition, Menefee testified as follows:

> Q. Did you ever request any kind of a workplace accommodation from h
> resources because of a migraine?
> A. I don't recall.[3]
>
> \*      \*      \*
>
> Q. Did you contact the human resource department with any reque
> accommodation while you were working for Action?
> A. I don't recall ever doing so.[4]

Menefee plainly stated in response to unambiguous questions that she did not

requesting a disability accommodation. Doc. 25-1, 42:1-4; 189:22-190:14.   A

accepted and relied upon this response, and did not conduct further discovery o

point. Several months later, in response to Action's motion for summary judg

with no explanation, Menefee very specifically states that she requ

accommodations in the form of continued employment, holding her job open

temporary period of leave, and a temporarily reduced work schedule. Doc. 31

6, ¶ 33. Action submits that this is a sham and should be disregarded.

**B.   Temporary work restrictions are not a disability under the ADA**

Menefee provided two treatment notes to Action after her car wreck. Doc

15, p. 44; Doc. 25-15, p.43. Both stated that she was temporarily unable to work

*Id*. A temporary inability to work is not a permanent or long-term impairmen

does not constitute evidence of a disability. *See Sutton v. Lader*, 185 F.3d 1203,

(11th Cir.1999); *Johnston v. Henderson*, 144 F. Supp. 2d 1341 (S.D. Fla. 2

*Richardson v. Koch Foods of Alabama*, LLC, No. 2:16-CV-00828-SRW, 2019

1434662, at *6 (M.D. Ala. Mar. 29, 2019), appeal dismissed, No. 19-11627

2019 WL 5571182 (11th Cir. Aug. 14, 2019) (a six-week period out of

followed by a return to full-duty without restrictions did not constitute a disabi

Multiple cases cited by the Eleventh Circuit in *Sutton* underscore this p

*Huff v. UARCO, Inc.,* 122 F.3d 374 (7th Cir.1997) (temporary condition

disability under the Act); *Sanders v. Arneson Products, Inc.* 91 F.3d 1351, 1354

Cir.1996) (plaintiff's four-month temporary impairment was too brief to

"disability"); *Gutridge v. Clure,* 153 F.3d 898, 901-02 (8th Cir.1998) (A temp

inability to work while recuperating is not such a permanent or long

impairment and does not constitute evidence of a disability covered by the Act

**C.   Emailing contradictory doctor's notes to an employer doe
constitute a request for a disability-based accommodation.**

The employee has the burden of identifying an accommodation

demonstrating that it is reasonable. *Frazier-White v. Gee*, 818 F. 3d 1249, 1155-

constituted a request for reasonable accommodation of continued leave of abs

and limited duty, was emailing two notes on the day of the wreck reading as fol

> Return to Work/School Status
> 11/20/17    02:07 pm    performed by Walden, Cindy
> Entered on 11/20/17    02:07 PM
>
> Return To Work/School Status
> Employer/School: Action Resources
> Return to Work/School start date: 11/23/17
>
> Return to Work/School Comment: patient was seen in the UAB
> Highland ER on 11/20/17. Patient may return to work on 11/23/2017.

Doc. 25-15, p. 44.

**Return to Work/School Status**
*Work Status :*  Return to work, with restrictions
*Restricted Work/School Stop Date :*  12/20/2017

<u>Work Restriction Grid</u>

| Restrictions : | |
|---|---|
| | light actvity: -restricted work hours such as 4-6 hours a day -restricted computer usage due to uncontrolled migraine headaches and intermittent blurry vision -allow for frequent bathroom breaks due to taking a required medication containing diuretic |

Doc. 25-15, p.43.

Despite exhaustive research, Action has identified no authority fo[r]
proposition that treatment notes constitute a request for a disability accommod[ation]
under the Americans with Disabilities Act.  One note stated that Menefee req[uired]
two days off, while the other did not. One stated that she required light duty, [while]
the other did not. One put restrictions in place for two days, while the other put [them]
in place for 29 days. Each said her restrictions were temporary, but their descrip[tions]
varied broadly in timing and scope. Given that the notes' coincided with Mene[fee's]
car wreck, and taking into account the contradictory yet temporary nature of [her]
restrictions, Action submits that no employer would interpret them as request[ing a]
disability-based workplace accommodation.  Any employer in Action's pos[ition]
would have seen them as being exactly what they were: return to work [notes]
following a car wreck. Not a disability notification, not a request for a work[place]
accommodation under the ADA, just return to work notes following a car w[reck.]
Menefee notified Action that she had been in a car wreck and then emailed tw[o car]
wreck-related notes with conflicting return to work dates and restrictions.

Action has no record knowledge of a request by Menefee for a disa[bility]
accommodation.  Doc. 38-1, ¶ 20  She did not request an extension of her app[roved]
leave or permission to work partial days. Doc 38-1, *Id.*  She did not request a pro[motion]

submits that absent Menefee's presentation of evidence – a letter, e

conversation, form, or text – from Menefee *specifying a disability-*

*accommodation*, Action is entitled to judgment in its favor and dismissal o

claim. Fed. R. Civ. P. 56.

Finally, Menefee argues that Action may have regarded her as disabled

if she did not have a disability.  Under Rule 8(a), she was required to provide r

of her claims against Action in her lawsuit. Her lawsuit does not include a c

based on "perceived" or "regarded as" disability.  Doc. 18.  Therefore, Me

cannot pursue a claim of being perceived or regarded as disabled. Fed. R. Civ.

## III.   Plaintiff has failed to rebut, based on firsthand knowledge, Action's proof of undue hardship.

Menefee argues that Action could have allowed her to work part-time d

the Thanksgiving and Christmas holiday seasons without undue hardship. Acco

to the Action policy (Doc. 25-15), "The standard workweek period is 40 hours

p. 21.  The policy also states, "During busy periods, associates may be requir

work extended hours." *Id*., p. 22. In Doc. 25-26, Steve Royce describes in detai

allowing Menefee to work light-duty/part-time would have created an u

hardship. *Id*., p. 5, ¶¶ 13-14, 19, 6-7. Menefee's response is that the holidays ar

that busy for the Driver Settlement team. Doc. 31-2, p. 3, ¶¶ 13-14.

1 ¶ 15.   Long days and demanding schedules are required. Doc. 38-1,

Thanksgiving weeks are "hell weeks," and the weeks after are also hell. Doc. 2

143:17-19. The week after Thanksgiving is critical because they have to appro

holiday pay.  Doc. 25-20, 144:1-4. During the Thanksgiving and Christmas ho

seasons, mid-to-late November and December, an employee in Menefee's po

cannot work 4-6 hours per day. Doc. 38-1 ¶ 15. On summary judgment, the

moving party cannot create a genuine issue of material fact through speculatio

conjecture.  *See Bryant v. U.S. Steel Corp*., 428 Fed.Appx. 895, 897 (11th Cir. 2

Menefee's lack of personal knowledge prevents her from being able to contr

Action's proof that a long her to work full time would have created undue hard

Menefee also argues that she should have been allowed to work rem

Neither her deposition nor her declaration states that she asked to work rem

*See generally*, Docs. 31-2 and 25-2 (showing that Menefee does not allege tha

asked to work remotely).  Steve Royce confirmed that Menefee never asked to

remotely or from home. Doc. 25-26, p. 5, ¶ 15 There is no issue of fact on this p

## IV.   Menefee fails to establish race discrimination under 42 U.S.C. § 198

Plaintiff's Title VII race discrimination claim is due to be dismissed bec

it was not included in her EEOC charge (Doc 25-12, p.11) or reasonably exp

claim does not require administrative exhaustion, but it is due to be dism

because she failed to present sufficient proof to establish that she was termi

because of her race. As part of her race claim, she alleges that her Cauc

supervisor, Brandy Cupp, "work remotely from a company laptop." Doc. 31-2

¶ 28. Menefee never asked to work remotely. Doc. 25-26, p. 5, ¶ 15.  She state

she felt "singled out" by a sign team members were required to display when

break or at lunch. Doc. 31-2, p. 4, ¶ 16.  She does not allege that the sign only ap

to her, and her description of Cupp "making us [put] up a sign when we we

break or lunch," makes it clear that the sign applied to the whole team. *See Id*.

It is uncontroverted that all settlement department employees, regardle

race, were required to use a sign indicating whether they were on break. Doc.

p.34 ¶ 16. This was not race discrimination.

Plaintiff argues that she was not replaced by a black female, de

submitting a declaration from her replacement, a black female named Jackie

(Doc. 31-3, pp. 1-9), who was a temp-to-perm employee. Doc. 25-20, 17

176:21; Doc. 25-16, 81:3-5. According to her declaration, Nails worked for a

agency, was interviewed by Brandy Cupp in November 2017, and began wo

for Action as a Driver Settlement Coordinator in December 2017. Doc. 31-1, p

her because she had a temp position that was scheduled to last six weeks. A

previously stated that Nails was a temp-to-perm employee, and that if Menefe

returned during the 30-day window, Nails would been gone back to the agency.

25-20, 175:22-177:5; Doc. 25-16, 81:3-5. For Menefee to be able to return,

had be hired in a temporary position.  This does not change the fact that sh

black female who replaced Menefee as Driver Settlement Coordinator.  Doc. 3

3; Doc. 25-20, 175:22-176:21; Doc. 25-16, 81:3-5.

Menefee also states that she "discovered through litigation" that Actio

allowed "other employees" to take leave without PTO or FMLA for 12 weeks

that at least one of these other employees is Caucasian. Doc. 31-2, p. 5, ¶ 26.

does not allege or provide any facts establishing that she and this employee

similarly situated. Establishing that a putative comparator is similarly situated

third prong of a plaintiff's prima facie case. *Trask v. Sec., Department of Vet*

*Affairs*, 822 F.3d 1179, 1192 (11th Cir. 2016). A plaintiff and the employee iden

as a comparator must be similarly situated in all relevant respects. *Wilson v*

*Aerospace, Inc*., 376 F.3d 1079, 1091 (11th Cir. 2004). The comparator mu

"nearly identical" to the plaintiff to prevent courts from second-guessi

reasonable decision by the employer. *Id*.  Menefee offers no facts demonstratin

Finally, Menefee alleges that she "became aware during litigation" that A

transferred a Caucasian employee to driver payroll in January 2018. Doc. 31-2,

¶ 29. Assuming that this is true, the Caucasian employee replaced Jackie Nails

Doc. 31-3, p. 1, ¶ 2), not Menefee.

## IV.   Action invited Plaintiff to return to work, and Plaintiff declined.

On November 21, 2017, Menefee was given written notice that she

return if she reapplied within 30 days. Doc. 25-12, p. 2. She was eligible

reinstated with the same status, same position, same pay, same title, same te

same benefits and 401(k) vesting — "it would be like she never left." Doc. 2

189:15-190:7. Steve Royce and Brandy Cupp testified that they would have

Menefee back if she had reapplied in thirty days. Doc. 25-20, 176:5; 189: 1

Doc. 25-16, 73:5-7; 13-18. Cupp in particular wanted her to come back

According to Menefee's testimony under oath and documentation from her me

treatment providers, her temporary restrictions ended before the end of the th

day period. Doc. 25-16, 73:3-7; Doc. 25-20, 175:22-177:5.  As such, she fail

mitigate her damages by failing to return within thirty days. Doc. 25-1, 164:2-

### CONCLUSION

Based upon the foregoing, Action submits that summary judgment in its

Respectfully submitted,

*s/ Lisa Karen Atkins*
Lisa Karen Atkins
M. Tae Phillips
Ogletree, Deakins, Nash,
 Smoak & Stewart, PC
420 North 20th Street, Suite 1900
Birmingham, AL  35203
(205) 328-1900 Telephone
lisa.atkins@ogletreedeakins.com
tae.phillips@ogletreedeakins.com

Attorneys for Defendant,
Action Resources, LLC

## CERTIFICATE OF SERVICE

I hereby certify on this the 1st day of June, 2020, I electronically file foregoing pleading using the CM/ECF system which will automatically notification of such filing to the following:

Leslie A. Palmer
Palmer Law, LLC
104 23rd Street South, Suite 100
Birmingham, Alabama 35233

*s/ Lisa Karen Atkins*
Of Counsel