# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **JERONICA L. MENEFEE,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No.: 2:18-cv-01208-CLM |
| | ) |
| **ACTION RESOURCES, LLC,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

Jeronica Menefee ("Menefee") worked as a driver settlement coordinator for Action Resources, LLC ("Action") in its Birmingham office. Action terminated Menefee's employment shortly after Menefee was in a car wreck. Menefee sues Action, alleging that Action terminated her on the basis of race and disability, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and the Americans with Disabilities Act.

Action seeks summary judgment on all claims (doc. 25). For the reasons stated below, the court **grants** Action's motion for the race discrimination claims (Counts 1-2) and **denies** the motion for the disability claims (Counts 3-4). So this case will go to trial on the disability claims.

## STATEMENT OF THE FACTS

<u>Menefee's Hiring and Employment</u>: Menefee started working for Action as a driver settlement coordinator in February 2017, and she was the only African American driver settlement coordinator during her tenure.

Menefee mainly worked at a computer on driver pay issues. Action says that Menefee was generally a good employee, although it adds that she was at times reprimanded for spending time away from her desk and being on her phone. (Menefee contends that Action allowed White employees in her department to engage in similar behavior without mention or reprimand).

<u>Menefee's Health</u>: Before Action hired her, Menefee was unemployed for several years because of what she describes as "chronic debilitating migraines." Menefee claims that she disclosed this information to her supervisor, Brandy Cupp, which Action denies. After starting at Action, Menefee began suffering from what her doctors later diagnosed as a cerebrospinal fluid (CSF) leak, which Menefee says caused headaches and blurry vision, along with a runny nose.

So Menefee took leave from Action to have brain surgery. Menefee began her approved leave on October 9, 2017, with an original return date three weeks later on October 30. But Menefee did not return to work as planned. According to Menefee, "complications" from the brain surgery required her to request another week of leave, which Action granted.

Menefee did not return after this added week either. She instead requested more leave until November 20. Action approved the additional leave and also approved Menefee's short-term disability benefits through November 20.

Menefee's Termination: Menefee was in a car wreck on November 20—*i.e.,* the day she was supposed to return to work. Menefee notified Cupp (her supervisor), then went to the emergency room because she was concerned about the effect of the airbags striking her in the head not long after her brain surgery.

Menefee left the ER that afternoon with a nurse's note advising that she should not return to work until November 23. Menefee then visited her ENT clinic, which provided her with a note imposing additional restrictions – including limited computer usage to 4-6 hours per day – until December 20.

Menefee gave these notes to Action's HR department. Action terminated Menefee the next day, November 21. Menefee says that Action did not offer her the chance to work remotely or with a flexible schedule, but that it did extend these offers to White employees. Action denies that it allowed any similarly situated employees these benefits and says that Menefee never requested them.

Action replaced Menefee with a temporary employee who it hired and began training sometime in early December 2017. The temporary employee was Black. Action replaced the temporary Black employee with a White employee a few weeks later.

**STANDARD OF REVIEW**

Summary judgment is appropriate only when the moving party shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is material if it is one that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In turn, to avoid summary judgment, the nonmoving party must go beyond mere allegations to offer specific facts creating a genuine issue for trial. *Id.* at 324. Moreover, all evidence must be viewed and inferences drawn in the light most favorable to the nonmoving party. *Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*, 420 F.3d 1146, 1149 (11th Cir.2005). When no genuine issue of material fact exists, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

**ANALYSIS**

**A. Title VII Race Discrimination Claim (Count 1)**

Title VII of the Civil Rights Act of 1964 prohibits employment discrimination on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e et seq. Before bringing a Title VII action, a plaintiff must first file a charge of discrimination with the EEOC. *Gregory v. Georgia Dept. of Human Res.*, 355 F.3d 1277, 1279 (11th Cir.2004). This exhaustion requirement ensures that the EEOC has "the first opportunity to investigate the alleged discriminatory practices to permit it to perform

its role in obtaining voluntary compliance and promoting conciliation efforts." *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 929 (11th Cir.1983). To enforce this requirement, the Eleventh Circuit limits complaints alleging discrimination under Title VII to the EEOC investigation that can "reasonably be expected to grow out of the charge of discrimination." *Mulhall v. Advance Sec., Inc.*, 19 F.3d 586, 589 n. 8 (11th Cir.1994) (citing *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455 (5th Cir.1970)).

Menefee's EEOC charge contains no mention of race discrimination or even facts that might lead an investigator to suspect race discrimination. Instead, her charge focuses exclusively on disability discrimination. The only mention of race or racial discrimination came in the "Supplemental Information" section of Menefee's initial EEOC intake questionnaire. While it is true that "[d]ocuments filed by an employee with the EEOC should be construed . . . to protect the employee's rights and statutory remedies," *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 406 (2008) (holding that the EEOC's position that an intake questionnaire could function as a charge was a permissible interpretation of the ADEA), the Eleventh Circuit has held that "as a general matter an intake questionnaire is not intended to function as a charge." *Pijnenburg v. W. Georgia Health Sys., Inc.*, 255 F.3d 1304, 1305 (11th Cir.2001); *see also Francois v. Miami Dade County, Port of Miami*, 432 Fed.Appx.

819, 822 (11th Cir.2011). So the court does not consider the information in Menefee's intake questionnaire.

Even if the court considered Menefee's single mention of race in her Supplemental Information section, that mention could not have reasonably led to an investigation by the EEOC. In response to the question, "Was anyone in a similar situation treated the same, better, or worse than you," Menefee references a white co-worker who was also in an accident on the same day. But unlike Menefee, this co-worker did not go to the hospital (as Menefee did) and did show up to work (as Menefee did not). In other words, Menefee's only reference to race comes in comparing herself to a co-worker who was not "in a similar situation" to her. No EEOC investigation could "reasonably be expected" to grow out of a single mention of race, not included in the EEOC charge itself, that failed to allege any actual instance of race discrimination. *Mulhall*, 19 F.3d at 598 n.8.

## B. § 1981 Race Discrimination Claim (Count 2)

Unlike Title VII, § 1981 claims do not require administrative exhaustion. So the court turns to Menefee's claim that Action denied her "the same flexibility in schedule and application of policies" as White employees. Doc. 18 at 10.

To establish a prima facie case of race discrimination, a plaintiff must show that (1) she belongs to a protected class; (2) she was qualified to do the job; (3) she was subjected to adverse employment action; and (4) her employer treated similarly

situated employees outside her class more favorably. *Lewis v. City of Union, Georgia*, 934 F.3d 1169, 1185 (11th Cir. 2019). Menefee cannot show that Action treated similarly situated White employees more favorably (Element 4), so her race discrimination claim fails.

Menefee first argues that a reasonable juror could find differential treatment because Action replaced her with a White employee. But Action first replaced Menefee with a temporary employee, who was Black. Weeks later, Action replaced this temporary Black employee with a White employee from a different department. This White employee was later succeeded by another Black employee. Menefee argues that Action's choice of a White employee to replace the temporary Black employee creates a jury question about Action replacing Menefee because of her race. But Menefee offers no support for the argument that the court should ignore the temporary employee's race. Plus, two of the next three employees to fill Menefee's shoes were Black. Menefee presents no evidence that race motivated these decisions. So Menefee's evidence about replacements does not create a question for the jury.

Menefee next contends that a genuine issue of fact exists as to whether Action applied its leave policy more favorably to White employees. She says that Action gave a White employee a full twelve weeks of short-term disability benefits followed by long-term disability benefits. But using comparators to prove discrimination

requires that the comparator be "similarly situated in all relevant respects." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir.1997). Here, the only thing Menefee and the White employee have in common is that Action granted them leave. Menefee provides no indication that the two are "similarly situated" in any other capacity, such as the reasons necessitating leave or how long they had worked for Action.

Menefee asserts Action treated a different White employee more favorably when she was in a car wreck the same day as Menefee. Unlike Menefee, however, this White employee was not coming back from (twice-extended) leave and did show up to work after the accident. So the two were not similarly situated.

Lacking a comparator who is "nearly identical" to Menefee, this court cannot assess whether race discrimination actually occurred without the risk of impermissibly "second-guessing a reasonable decision" by Action. *Id.* And because favorable treatment of a similarly situated employee is needed to make a prima facie case of race discrimination, Menefee's § 1981 claim is due to be dismissed.

### C. ADA Reasonable Accommodation Claim (Count 3)

The ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment." 42 U.S.C. § 12112(a). To present a prima facie case of disability discrimination generally, the

plaintiff must show that: (1) she is disabled; (2) she is a qualified individual; and (3) she was subjected to unlawful discrimination because of her disability. *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255-56 (11th Cir. 2001).

If a Plaintiff asserts a "reasonable accommodation" claim, as Menefee does in Count 3, the plaintiff must establish the third prong (unlawful discrimination) by showing that her employer failed to reasonably accommodate her disability. *Id.* at 1255. The court reviews each element below.

### 1. Disability

Menefee claims that (among other ailments) her migraines are a disability under the ADA, which defines "disability" as including any "physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). The ADA Amendments Act of 2008 further clarifies that "major life activities" include "concentrating, thinking, communicating, *and working*." 42 U.S.C. § 12102(2)(A) (emphasis added). The 2008 amendments explicitly rejected several U.S. Supreme Court cases that demanded "a greater degree of limitation than was intended by Congress." Pub.L. 110–325, § 2(a)(7), Sept. 25, 2008, 122 Stat. 3553. Among these cases was *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, which had held that an impairment's impact must be "permanent or long term" to qualify as a disability under the ADA. 534 U.S. 184, 198 (2002).

Relying on *Toyota* and other decisions that predate the 2008 amendments, Action argues that Menefee's migraines were not a disability; they were merely "temporary restrictions." Doc. 26 at 25. While this argument may have had merit before 2008, it doesn't now. Congress removed an interpretation of "disability" that excludes all temporary impairments, and the EEOC regulations implementing the amendments provide that "[t]he effects of an impairment lasting or expected to last fewer than six months can be substantially limiting." 29 C.F.R. § 1630.2(j)(1)(ix).

In short, whether Menefee had a disability does not hinge on the duration of her impairment, but whether "it substantially limit[ed] [Menefee's ability] to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii). Menefee provided Action with a medical note recommending limited computer usage because of "uncontrolled migraine headaches and intermittent blurry vision," along with a restriction of work hours to 4-6 hours per day. Doc. 25-15, pg. 43. Following the 2008 amendments, the fact that these restrictions only applied for one month does not preclude the finding of a disability under the ADA. What matters here is whether a reasonable juror could conclude that Menefee's migraines, which her ability to use her computer and work a full 8-hour day, limited Menefee's ability to "work" relative to people without these restrictions. Action appears to concede that a reasonable juror could, *see* Doc.

50 at 19 (acknowledging Menefee's "temporary inability to work"), so the question of disability belongs to the jury.

### 2. Qualified Individual

Menefee must next establish that she is a "qualified individual"—that is, someone with a disability who, "with or without reasonable accommodation, can perform the essential functions of the employment position." 42 U.S.C. § 12111(8); *see also Holly*, 492 F.3d at 1256. In its motion for summary judgment, Action contests whether Menefee is a qualified individual simply by pointing out that she "would be unable to perform work of any kind for several days." Doc. 26, pg. 32. This bare-bones assertion ignores the ADA's coverage of people "who can perform the essential functions of their jobs presently or *in the immediate future*." *Wood v. Green*, 323 F.3d 1309, 1314 (11th Cir.2003). A reasonable juror could find that, if Action granted Menefee the three days off recommended in the note from the ER, Menefee could have returned to work with restrictions. So the question whether Menefee was a qualified individual goes to the jury.

### 3. Failure to Accommodate

The final element requires Menefee to identify a reasonable accommodation that would allow her to perform the essential functions of her job. Action may then rebut the claim by providing evidence that the requested accommodation would

impose an "undue hardship." *Medearis v. CVS Pharmacy, Inc.*, 646 Fed.Appx. 891, 895 (11th Cir.2016).

Disclosure: Menefee alleges that Action failed "to accommodate her need to return to work 3 days later than planned with a 4-6 hour restriction." Doc. 18 at 12. She also claims Action failed to "engage in any dialogue concerning [Menefee's] need for accommodations before terminating [her] employment." *Id.* Menefee maintains that her nurse's note recommending limited work hours and the ER note advising she have three days off constitute her disclosure of her disability and corresponding accommodation request. Action rejects that these notes put it on notice either that Menefee had a disability or that she was requesting an accommodation.[1] Doc. 26 at 29-30.

Generally, an employee must show that her employer has notice of her disability to succeed on a disability discrimination claim. *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir.2000). This does not, however, mean that an employer has complied with the ADA when it subjectively misconstrues a disability as merely an impairment not triggering ADA protections. *Morisky v. Broward County*, 80 F.3d 445, 448 (11th Cir.1996). In other words, Menefee needn't prove that Action knew that it was violating the ADA to prove her failure to accommodate claim. The ADA

---

[1] Menefee argues that Action already had notice of her disability – which she states included migraines and the CSF leak – through past statements she made to Action, including an email in which she asked her supervisor if she could leave early because nearby construction work was giving her a "bad migraine." Doc. 25-15, pg. 27. Action disputes that Menefee's earlier email(s) constitute notice.

only requires that Action knew of the impairment or limitation that constituted Menefee's disability and, upon Menefee's request, offered no available reasonable accommodations. 42 U.S.C. § 12112(b)(5)(A) (noting that disability discrimination includes failing to make reasonable accommodations "to the known physical or mental *limitations* of an otherwise qualified individual *with a disability*") (emphasis added).

Action's Director of Human Resources, Steve Royce, was aware of Menefee's medical notes and their contents. Doc. 25-20, 192:7-16. Although Royce did not consider Menefee's restrictions to constitute a disability, he did acknowledge his belief that Menefee could not perform her job duties with them. Doc. 25-20, 192:7-16. In ADA parlance, that means Royce knew that Menefee was disclosing an "impairment" that "substantially limited" her ability to work (a major life activity). This is sufficient evidence to make disclosure a jury question, even if Royce mistakenly believed that the temporary nature of Menefee's impairments precluded them from ADA coverage.

Accepting that the medical notes can establish disclosure, the question then becomes whether they can also establish a request for an accommodation. "An employer's duty to provide a reasonable accommodation … 'is not triggered unless a specific demand for an accommodation has been made.'" *Adigun v. Express Scripts, Inc.*, 742 Fed.Appx. 474, 476 (11th Cir.2018) (citing *Gaston v. Bellingrath*

*Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir.1999)). Although the Eleventh Circuit has not specified what form a request for reasonable accommodations must take, it has favorably cited language from the Tenth Circuit holding that a request for accommodation should provide the employer with "enough information about [the employee's] ... limitations and desires." *Adigun*, 742 Fed.Appx. at 477 (citing *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1172 (10th Cir. 1999)). That is, the demand must be specific enough to put the employer on notice as to the employee's "desire for an accommodation." *United States v. Hialeah Housing Authority*, 418 Fed.Appx. 872, 876 (11th Cir.2011) (citing *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 506 (3d Cir.2010)).

While the Eleventh Circuit is silent on this issue, at least two district courts within this circuit have concluded that a doctor's note may suffice as a request for a reasonable accommodation in some cases. *See Roundtree v. Florida*, 2015 WL 3756811 (M.D. Fla. May 26, 2015); *Toliver v. City of Jacksonville*, 2017 WL 1196637 (M.D. Fla. March 31, 2017). Like those courts, this court finds that a reasonable juror here could find that Menefee's medical notes contained a request for a reasonable accommodation. No matter how Action subjectively viewed these notes, a reasonable juror could find that they put Action on notice that medical personnel thought that time off and reduced hours were needed to allow Menefee to work through migraines and blurry vision.

Reasonableness: Menefee must also prove that the accommodation she requested was "reasonable." *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1286 (11th Cir.1997). An accommodation is reasonable only if it permits the employee to perform the essential functions of the job. *McKane v. UBS Fin. Services, Inc.*, 363 Fed.Appx. 679, 681 (11th Cir.2010). "Whether a function is 'essential' is a case-by-case determination based on several factors." *Spears v. Creel*, 607 Fed.Appx. 943, 949 (11th Cir.2015). The ADA identifies several possible reasonable accommodations, including "job restructuring, parttime or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations." 42 U.S.C. § 12111(9)(B).

Action's motion for summary judgment and Menefee's response discuss three possible accommodations: three days off, a month of work with a 4-6 restriction, and working remotely. The court will not consider Menefee's proposal to work remotely because this was not an accommodation raised by her medical notes. Doc. 25-15 at 43-44. So Menefee must show that the proposed accommodation of three days off, followed by a month of light-duty work, was reasonable.[2]

---

[2] The court considers Menefee's proposal of three days off and a month of light duty work as a single accommodation for two reasons. First, that's how Menefee pleaded it. *See* Doc. 18, ¶55. Second, each piece requires the other. If the initial three days off would not have been reasonable, Menefee would not have been able to use the additional month

Menefee argues that three days off followed by a month of 4-6 hour work days would have allowed her to perform the essential functions of her job. The ADA explicitly recognizes "parttime or modified work schedules" as potential accommodations. 42 U.S.C. § 12111(9)(B). And the Eleventh Circuit has held that a leave of absence may be a reasonable accommodation so long as it is not for an indefinite period. *Santandreu v. Miami Dade County*, 513 Fed.Appx. 902, 905 (11th Cir.2013). So Menefee's argument is legally sound.

The question thus becomes whether reducing Menefee's hours for 30 days would have prevented her from completing the essential functions of her position. The record shows that Action did not hire a temporary employee to replace Menefee for more than a week after the accident. That Action survived Thanksgiving week without anyone in Menefee's position, then relied on a temporary employee, makes it possible that a reasonable juror could find that Menefee could have performed the essential functions of the job while working reduced hours.

<u>Undue hardship</u>: Having found that Menefee may be able to establish a reasonable accommodation, the court turns to Action's opportunity to prove an undue hardship. *Holbrook v. City of Alpharetta, Ga.*, 112 F.3d 1522, 1526 (11th Cir. 1997). The ADA defines "undue hardship" as "an action requiring significant

---

of modified hours. Conversely, if the month of modified work hours was unreasonable, the additional three days off would not have allowed Menefee to perform the essential functions of her job upon returning.

difficulty or expense," considering certain other factors. 42 U.S.C. § 12111(10)(A)–(B). These factors include (1) the nature and cost of the reasonable accommodation; (2) the overall financial resources and number of employees of the affected facility, and the effect that the reasonable accommodation would have on the facility's expenses and resources or other effects on the operation of such facilities; (3) the employer's overall financial resources, number and type of facilities, and number of employees; and (4) the type of operation run by the employer. *Id.*

Action argues that Menefee's absence for the brain surgery and recovery had created an "extreme hardship" for her fellow employees, who had to perform some of Menefee's job duties along with their own. Doc. 26 at 35. Action states that it accepted this hardship at first because it believed Menefee's absence would be temporary. *Id.* But once Menefee notified Action that she would need the accommodations of more time off and reduced hours, the situation became "unworkable." *Id.* Action argues that, particularly because the holidays were approaching, someone had to staff Menefee's position and that person needed to work "at least a 40-hour work week." Doc. 26, pg. 37.

Menefee responds by citing pay stubs that reveal Menefee had sometimes worked less than 40 hours per week before her termination—though none of these weeks took place during the holidays. Doc. 31-2. As for the holidays, Menefee points out that the temporary employee who replaced her (Jackie Nails) did not begin

working until December, at least one week after Thanksgiving. Doc. 31-1. And according to Nails' declaration, Nails was still in training until December 21, the day after Menefee's work-hour restrictions would have lifted. *Id.*

To be clear, this court has no doubt that the Thanksgiving and Christmas season presents logistical headaches for a trucking company. They may even be "hell weeks," as Action puts it. Doc. 25-20 at 143. But based on the evidence presented, the court finds that Action's description is genuinely disputed, and a reasonable juror could go either way when asked if giving Menefee another three days off, followed by a month of 4-6 hour workdays, would have created an undue hardship for Action.

\* \* \*

In sum, a reasonable juror could decide each element of Menefee's reasonable accommodation claim for either party. So summary judgment is not warranted.

### 4. Disability Discrimination (Count 4)

Menefee also brings a separate claim of disability discrimination under the ADA. Menefee does not have direct evidence of discrimination, so she must rely on the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *McCann v. Tillman*, 526 F.3d 1370, 1373 (11th Cir. 2008). Under this framework, the plaintiff must establish a prima facie case, then the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the challenged conduct. *Cleveland v. Home Shopping Network, Inc.*, 369

F.3d 1189, 1193 (11th Cir. 2004). If the defendant offers a legitimate nondiscriminatory reason, the burden then shifts back to the plaintiff to show the articulated reason is a pretext for discrimination and "unworthy of credence." *Id.*

Prima Facie case: To make a prima facie case of disability discrimination, Menefee must establish that: (1) she is disabled; (2) she is a qualified individual; and (3) she was subjected to unlawful discrimination because of her disability. *Lucas*, 257 F.3d at 1255-56. The first two elements are the same as the first two elements of Menefee's reasonable accommodation claim, so the court finds that Menefee has presented sufficient evidence that she is disabled and a qualified individual for the reasons laid out in Parts 3.A and 3.B of this opinion.

That leaves the third element: Did Action terminate Menefee because of her disability? Along with the evidence and arguments discussed in Part 3, Menefee argues that Action fired her "in an effort to keep its insurance costs down." Doc. 32, pg. 39. Specifically, she contends that because "Action is self-funded and long and short term disability insurance is provided at no cost to administrative employees," Action had an incentive to fire her in order to avoid making additional payments to cover her "extensive procedures." *Id.*

Having reviewed the evidence submitted by both parties, the court finds that a reasonable juror could find that Action's decision was based on Menefee's impairment(s), so the court finds that Menefee could make a prima facie case.

Nondiscriminatory reason: So the burden now shifts to Action to provide a legitimate nondiscriminatory reason for terminating Menefee. But as Menefee points out, Action "does not articulate a reason and does not otherwise move for summary judgment related to disability based on this [*McDonell Douglas*] burden shifting analysis." Doc. 32 at 39-40. Assuming that Action would rely on the "undue hardship" argument that it levies against Menefee's reasonable accommodation claim, the court again finds that there is a genuine factual dispute whether terminating Menefee was necessary to overcome the hardship. The jury must decide. So summary judgment is not warranted on Count 4.

## CONCLUSION

For the reasons stated above, Action's motion for summary judgment (Doc. 25) is due to be **GRANTED in part** and **DENIED in part**. The motion for summary judgment is **GRANTED** as to Counts 1 and 2 and **DENIED** as to Counts 3 and 4. The court will enter a separate order carrying out this finding.

**DONE** this 14th day of December, 2020.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE